UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ALEXANDER SCHRODER PALOMAREZ,<br><br>Petitioner,<br><br>vs.<br><br>DARIN YOUNG, Warden, and<br>MARTY JACKLEY, Attorney General of<br>the State of South Dakota,<br><br>Respondents. | CIV. 15-5007-JLV<br><br><br>ORDER |

On February 2, 2015, petitioner Alexander Palomarez, an inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   (Docket 1).   On March 19, 2015, the defendants moved to dismiss the petition.   (Docket 9).   Mr. Palomarez opposed the motion.   (Dockets 11, 12 & 14).   Pursuant to a standing order of October 14, 2014, the matter was referred to United States Magistrate Judge Veronica L. Duffy pursuant to 28 U.S.C. § 636(b)(1)(B).   On October 1, 2015, Judge Duffy issued a report recommending the court grant the defendants' motion to dismiss.   (Docket 22).   Pursuant to 28 U.S.C. § 636(b)(1), objections to the report and recommendation were due on or before October 17, 2015.   Mr. Palomarez timely filed his objections.   (Dockets 23-28).   Following the deadline to file objections, Mr. Palomarez filed a number of additional supplements, affidavits and motions.   (Dockets 31, 32, 34-36, 38, 39, 41, 44-47, 52, 54, 56 & 58).

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.   Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).   The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1).   Mr. Palomarez's objections are overruled and the report and recommendation is adopted as modified by this order.   Mr. Palomarez's other motions are denied.

## PETITIONER'S OBJECTIONS

Mr. Palomarez was charged on June 13, 2013, with first degree rape in violation of SDCL § 22-22-1(1), and possessing, manufacturing or distributing child pornography, in violation of SDCL §§ 22-24A-3(3) & 22-24A-22-2(16), both alleged offenses occurring on or about June 1, 2013.   (Docket 1-7 at p. 6).   On June 13, 2013, an amended complaint was filed alleging the child pornography offense occurred on or about June 12, 2013.   Id.   On October 23, 2013, Mr. Palomarez pled guilty to the offense of first degree rape.   (Docket 10-1 at p. 1). On December 10, 2013, Mr. Palomarez was sentenced to 50 years in prison. (Docket 22 at pp. 1-2) (referencing Docket 10-1).

Before addressing Mr. Palomarez's objections, the court adopts the procedural history outlined in the report and recommendation.   Id. at pp. 2-3. Although Mr. Palomarez filed his objections, a number of supplements and affidavits, the essence of his objections are summarized as follows:

2

1. The South Dakota Supreme Court erred when it rejected Mr. Palomarez's motion for a certificate of probable cause;

2. The magistrate judge erred in concluding Mr. Palomarez failed to show cause for his procedural default in the state court action; and

3. Mr. Palomarez claims to be actually innocent of the state court offense.

(Dockets 23-28).   Mr. Palomarez's later supplements, affidavits and motions repeat the factual basis for those claims and need not be addressed.

The magistrate judge properly identified and analyzed Mr. Palomarez's petition under the law of procedural default.   (Docket 22 at pp. 5-16). Following that analysis, the magistrate judge concluded "[b]ecause the last reasoned state court opinion dealing with Mr. Palomarez's claims did not address their merits but rejected them on procedural grounds, this court is precluded from reviewing them."   Id. at p. 12 (referencing Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.") and Wiegers v. Weber, 37 Fed. Appx. 218, 219-20 (8th Cir. 2002) (unpublished) (prisoner's failure to timely appeal denial of state habeas resulted in denying South Dakota an "opportunity

to decide the . . . claim on the merits because Wiegers failed to present the claim to the state court in a timely or procedurally correct manner.").

The court will separately address Mr. Palomarez's objections.

1.   THE SOUTH DAKOTA SUPREME COURT ERRED WHEN IT REJECTED MR. PALOMAREZ'S MOTION FOR A CERTIFICATE OF PROBABLE CAUSE

Mr. Palomarez did not object to the magistrate judge's development of the facts or the chronology of events which occurred relative to the state court proceedings.   (Dockets 23-28).   Rather, Mr. Palomarez claims the South Dakota Supreme Court should have acknowledged his motion for issuance of a certificate of probable cause filed on December 18, 2014, the date it was certified as having been placed in the mail at the South Dakota State Penitentiary. (Docket 26) (citing Houston v. Lack, 487 U.S. 266, 274-76 (1988) ("a *pro se* prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk. . . . [P]rison authorities . . . have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date.   Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one. . . . We thus conclude that the Court of Appeals had jurisdiction over petitioner's appeal because the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.")

4

(emphasis in original).   See also Docket 44 at p. 1 (seeking to amend the federal habeas petition to include the "prison mailbox rule."[1]).   Because his filing was timely under the prison mailbox rule, Mr. Palomarez argues the South Dakota Supreme Court erred in rejecting his motion which was physically received by the court on December 29, 2014.[2]   (Dockets 26 & 44).   See also Docket 1-9 at p. 42.

The South Dakota Supreme Court refused to acknowledge the three-day mailing allowance granted by SDCL 15-6-6(e) or the prison mailbox rule in evaluating a motion for certificate of probable cause under SDCL § 21-27-18.1. "By its plain language, the deadline for filing a motion for certificate of probable cause with this Court is based upon the filing date of the [state] habeas court's refusal to issue a certificate of probable cause.   There is no notice of entry or service requirement as with civil appeals filed under SDCL ch 15-26A.   Because there is no service requirement, the three-day mailing rule provided by SDCL 15-6-6(e), applicable to civil appeals under SDCL ch 15–26A, does not apply here."   Hannon v. Weber, 638 N.W.2d 48, 49 (S.D. 2001).   The South Dakota Supreme Court observed it "may not add language to a statute by 'judicial

---

[1]Fed. R. App. P. 4(c) "establishes a prison mailbox rule and requires prisoners to deposit their papers with prison authorities by pertinent due dates in order to benefit from the rule."   Grady v. United States, 269 F.3d 913, 918 (8th Cir. 2001).

[2]Mr. Palomarez filed a motion to amend his petition to assert the prison mailbox rule.   (Docket 44).   This motion does not change the court's analysis of SDCL § 21-27-18.1.   The motion to amend (Docket 44) is denied.

legislation.' " Id. (citations omitted).   The South Dakota Supreme Court applied the same determination to documents "deemed filed," declaring "[t]here is no latitude granted to this Court to interpret unambiguous statutes by any method but their plain language." Id. at 50.   Because of the clear language of SDCL 21-27-18.1, the South Dakota Supreme Court determined the filing date with the Clerk of the Supreme Court was jurisdictional.   "Pursuant to the filing deadlines of the statute, this Court dismisses motions for certificate of probable cause that are untimely filed.   Many of these are filed only one day late.   It is not our task to revise or amend, via judicial opinions, statutes or court rules, or to liberally construe a statute . . . to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction." Id. (internal quotation marks and citations omitted).   See also Flowers v. Weber, 844 N.W.2d 363 (2014) ("SDCL 21-27-18.1 is jurisdictional").

"Under both South Dakota law and United States Supreme Court precedent, a pleading is not 'filed' until it is received by the clerk of court for inclusion into the official record." Burritt v. Young, No. CIV. 14-5078-JLV, 2015 WL 4249403 at *10 (D.S.D. July 13, 2015) (adopting the report and recommendation of United States Magistrate Judge Veronica L. Duffy) (referencing Artuz v. Bennett, 531 U.S. 4, 8 (2000); United States v. Lombardo, 241 U.S. 73, 76 (1916); Hannon, 638 N.W.2d at 49–50).

Mr. Palomarez's first objection to the report and recommendation is overruled.

6

2.    THE MAGISTRATE JUDGE ERRED IN CONCLUDING MR.
        PALOMAREZ FAILED TO SHOW CAUSE FOR HIS
        PROCEDURAL DEFAULT IN THE STATE COURT ACTION

The magistrate judge properly analyzed the law of "cause" to warrant excusing a petitioner from a dismissal of a federal habeas petition for procedural default.   (Docket 22 at pp. 13-14).   It must be pointed out that it was Mr. Palomarez's receipt of the December 1, 2014, letter decision of Judge Davis which "triggered the running of the 20-day jurisdictional time period during which it was incumbent on Mr. Palomarez to seek a certificate from the South Dakota Supreme Court."   Id. at p. 15.   Mr. Palomarez does not challenge this finding but claims under the prison mailbox rule his motion dated December 18, 2014, satisfied the "cause" element.   (Dockets 26 & 31).

The magistrate judge found the legal aid lawyer who assisted Mr. Palomarez gave him "accurate advice."   (Docket 22 at p. 15).   "The legal aid lawyer never advised Mr. Palomarez to wait more than 20 days before filing his motion with the supreme court."   Id.   Mr. Palomarez does not challenge this finding.   (Dockets 23-28).

Mr. Palomarez failed to show "cause" for the procedural default in the state court habeas proceedings.   In order to be released from a procedural default determination, Mr. Palomarez is required to show both "cause" for his default and actual prejudice.   Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992). Mr. Palomarez's second objection is overruled.

7

3.   MR. PALOMAREZ CLAIMS TO BE ACTUALLY INNOCENT OF
     THE STATE COURT OFFENSE

Even though the court can summarily dismiss the petition without further

analysis, the court will analyze the second prong—actual innocence.   Id.   "[A]

petitioner can obtain review of procedurally defaulted claims if he produces

reliable new evidence not available at trial which demonstrates that it is more

likely than not, that with this evidence no reasonable juror would have convicted

him."   Amrine v. Bowersox, 128 F.3d 1222, 1226-27 (8th Cir. 1997) (referencing

Schlup v. Delo, 513 U.S. 298, 326-38 (1992)).   "If a petitioner presents sufficient

evidence of actual innocence, he should be allowed through this gateway

permitting him to argue the merits of his underlying constitutional claims."   Id.

at 1227.   "In deciding whether a petitioner has made the necessary showing of

innocence, a federal court must make its own determination of whether the

'probative force of the newly presented evidence in connection with the evidence

of guilt adduced at trial' is sufficient to warrant consideration of the otherwise

barred claims."   Id. (quoting Schlup, 513 U.S. at 330-32).   "The underlying

reason for an actual innocence gateway is that the 'quintessential miscarriage of

justice is the execution of a person who is entirely innocent.' "   Id. (quoting

Schlup, 513 U.S. at 324-26).

"A petitioner can meet the standard even if 'the trial record contained

sufficient evidence to support the jury's verdict' because the district court must

consider 'the probative force' of the new evidence together with what was

8

produced at trial."   Id. at 1228 (quoting Schlup, 513 U.S. at 330-32).   "If new evidence calls into question the credibility of the witnesses at trial, the habeas court may itself have to make credibility assessments . . . ."   Id.   "On a gateway claim of actual innocence, a federal court must consider all the evidence to make its own determination whether there is a sufficient showing to justify consideration of a petitioner's otherwise barred claims, and this calculus may involve making credibility determinations of key witnesses."   Id.   "[A]n evidentiary hearing is not required on a claim of actual innocence if development of the claim would not establish actual innocence."   Bannister v. Delo, 100 F.3d 610, 617 (8th Cir. 1996).

The magistrate judge concluded Mr. Palomarez's pleading did not "assert his actual innocence."   (Docket 22 at p. 18).   The magistrate judge references a letter attached to Mr. Palomarez's pleadings.   Id. (referencing Docket 11-1). The letter mentions Mr. Palomarez's claim that "[t]here is [sic] two pieces of evidence overlooked that is [sic] exculpatory.   Tha twill [sic] prove actual innocence."   (Docket 11-1 at p. 1).   The magistrate judge concludes that "[n]owhere in the letter does Mr. Palomarez express what the 'two pieces' of overlooked evidence are, when he discovered the evidence, and what efforts were undertaken before his plea and sentencing to discover the evidence."   (Docket 22 at p. 18) (referencing Docket 11-1).

While Mr. Palomarez's letter did not identify the two pieces of evidence, it is clear he was referencing the materials attached to his federal habeas petition.

9

See Dockets 1-3 and 1-4.   The evidence is actually three separate exhibits. The exhibits are (1) a receipt from AT&T, for a new sim card and phone purchased by Mr. Palomarez on June 8, 2013; (2) a page from his checking and saving account history showing proof of payment for the items by a check clearing his account on June 10, 2013, for $111.99; and (3) a screen print from a Google play page for the time period May 1, 2013, through June 8, 2013. (Docket 1-3).   Mr. Palomarez claims that when he purchased this new phone on June 8, 2013, the sales associate transferred his contacts list from the old phone and nothing else could have been transferred to the new phone at that time. (Dockets 1-4 at p. 1; 1-9 at pp. 18-22; 23 at p. 1; 25-1 at p. 1).   In other words, Mr. Palomarez asserts he could not have had a program known as "Picasa" on his phone where law enforcement found the incriminating photographs on June 12 and 13, 2013.   (Dockets 1-4 at p. 2).   Mr. Palomarez argues it was clear he could not have committed the crime on June 12, 2013, because the entire day he was with his girlfriend, Jamie, the mother of the minor victim, in her home and ultimately in bed with Jamie.[3]   (Docket 24 at p. 1).   With this evidence, not used by his state court attorney, Mr. Palomarez asserts his actual innocence claim.

   This is not "new evidence" required to assert actual innocence in a federal habeas proceeding.   "The evidence is new only if it was not available at trial and

---

[3]Mr. Palomarez repeats this argument numerous times in multiple filings. See i.e., Dockets 36, 38 & 39.   There is no need for the court to reference these subsequent filings as the argument is always the same.

could not have been discovered earlier through the exercise of due diligence."
Amrine, 128 F.3d at 1230.   "To establish the requisite probability [that a
constitutional violation occurred], the petitioner must show that it is more likely
than not that no reasonable juror would have convicted him in the light of the
new evidence."   Schlup, 513 U.S. at 327.   "The habeas court must make its
determination concerning the petitioner's innocence in light of all the evidence,
including that alleged to have been illegally admitted (but with due regard to any
unreliability of it) and evidence tenably claimed to have been wrongly excluded or
to have become available only after the trial."   Id. at 328 (internal quotation
marks and citation omitted).

The court finds the evidence Mr. Palomarez offers is not new evidence
because it was information well-known by Mr. Palomarez in advance of his guilty
plea.   The court will not reject Mr. Palomarez's actual innocence claim solely on
that basis but will consider this evidence in light of the evidence presented in
support of his guilty plea.

Mr. Palomarez is fixated on his claim that the incriminating, pornographic
photographs could not have been generated by his new phone.   What he fails to
acknowledge is that he was not convicted of manufacturing or possessing child
pornography on his phone on June 12, 2013, the date law enforcement
discovered the alleged child pornography on his phone.   Only count II was
amended to reflect this new date.   Count I charging first degree rape continued
to allege an offense date of June 1, 2013.

Mr. Palomarez pled guilty to first degree rape occurring on June 1, 2013, in violation of SDCL § 22-22-1(1).[4]   (Docket 1-9 at p. 40).   During the grand jury proceeding, Jamie testified this was the date on which Mr. Palomarez was alone babysitting her three-year-old daughter.   (Docket 1-5 at p. 8).   When Jamie returned home later that evening her daughter was crying and Jamie discovered her daughter's pajamas lying on the bed.   Id. at p. 9.   When Jamie asked Mr. Palomarez why her daughter was now in a different set of pajamas he stated "she wanted to change pajamas and she asked me to help her."   Id. at p. 9:20-23. When Jamie was shown the photographs ultimately discovered on Mr. Palomarez's phone she recognized her daughter's hair, pajama top and the child was "naked from the waist down."   Id. at p. 5:23-25.   Another photograph showed a severe skin rash, which her daughter was known to have, and showed Mr. Palomarez performing cunnilingus with his face clearly visible.   Id. at p. 6. When confronted by law enforcement, Mr. Palomarez admitted he performed oral sex on the child, though he had no explanation as to how the photographs got onto his phone.   Id. at p. 14.

It makes no difference whether a third person took the photographs and then transferred them to Mr. Palomarez's new phone or that Mr. Palomarez took the photographs on his old phone and then transferred them to his new phone.

[4]"Rape is an act of sexual penetration accomplished with any person under any of the following circumstances . . . [i]f the victim is less than thirteen years of age . . . ."   SDCL § 22-22-1(1).   "Sexual penetration means an act, however slight, of . . . cunnilingus . . . ."   SDCL § 22-22-2.

What matters are the facts presented above and Mr. Palomarez's guilty plea. While the plea agreement, transcript of the change of plea hearing and the presentence report are not part of the federal record, the sentencing transcript was attached to Mr. Palomarez's petition.   (Docket 1-8).

During the sentencing hearing, in the presence of Mr. Palomarez, his attorney addressed a concern about language in the presentence report.   His attorney told the court, "I guess it's not a correction necessarily, but I think an explanation is required on Page 5.   That is -- in the statement Mr. Palomarez, the written statement he made . . . there's a statement wherein he says in that statement that he did not touch the victim, and I discussed that with him because at his plea hearing he admitted to cunnilingus."   Id. at p 2 (3:23-4:6). The court then invited a clarification by stating "[h]e admitted when he entered his plea of guilt that he had engaged in cunnilingus with the child, meaning he penetrated the child with his tongue."   Id. at p. 2 (4:10-13).   In response, Mr. Palomarez's attorney stated "Mr. Palomarez told me that what he meant by that was he did not use his hands to in any way manipulate the victim to place her in a certain place, but he does not deny touching.   The statement he made at the plea hearing is accurate."   Id. at p. 2 (4:19-23).   When Mr. Palomarez addressed the court he turned to the gallery apparently addressing Jamie and stated, "I'm really sorry for everything that happened.   No way I would ever put you in danger or your kids in danger and I'm sorry.   I apologize."   Id. at p. 4 (11:14-17). In its pronouncement of sentence, the state circuit judge said "the Court looked

13

at the 23 photographs in this case, which are close-up shots of you sexually abusing this three-year-old child.   The Court finds these photographs to be repulsive, sickening and outrageous and would note that the photographs . . . were kept by you so you could look at them over and over again, which is a photographic image of you sexually abusing this child."   Id. at p. 4 (13:10-17).

A plea of guilty is a "grave and solemn act," and should not be lightly set aside.   United States v. Hyde, 520 U.S. 670, 677 (1997).   "Unless the habeas petitioner has newly-discovered evidence that his guilty plea was a false declaration of guilt, he should not pass through the actual innocence gateway." Weeks v. Bowersox, 119 F.3d 1342, 1356 (8th Cir. 1997) (en banc) (J. Loken, concurring).

At no time during the sentencing hearing did Mr. Palomarez disavow his attorney's clarification or the state court judge's summary of the facts constituting the offense of conviction.   Mr. Palomarez makes no claim that his guilty plea was not voluntary or knowingly entered.   (Dockets 1 & 23-28).   To the contrary, it is clear from the sentencing hearing record Mr. Palomarez persisted in his guilty plea and took full responsibility for his unlawful conduct. The court finds Mr. Palomarez's guilty plea was not a false declaration of guilt. Weeks, 119 F.3d at 1356.

The court further finds Mr. Palomarez cannot show that a reasonable jury more than likely would have acquitted him at trial.   Amrine, 128 F.3d at 1230 ("The appropriate inquiry is whether it is more likely than not that in light of the

14

new evidence no reasonable juror, conscientiously following the judge's instruction requiring proof beyond a reasonable doubt, would vote to convict.") (internal quotation marks and citation omitted).   See also Barrington v. Norris, 49 F.3d 440, 441 (8th Cir. 1995) ("To invoke the actual-innocence exception to the procedural default rule, the habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted [him].") (internal quotation marks omitted, citing Schlup, 513 U.S. at 330).

Mr. Palomarez's confession to law enforcement, his plea of guilty, his statement of how the offense occurred, including the physical sex act itself, and his failure to repudiate both his attorney's and the state court judge's statements during the sentencing hearing convince the court that Mr. Palomarez is not entitled to an evidentiary hearing on this claim.   Weeks, 119 F.3d at 1356; Bannister, 100 F.3d at 617.

Mr. Palomarez's third objection to the report and recommendation is overruled.

## ORDER

The court finds the report and recommendation is an accurate and thorough recitation of the facts and applicable case law.   The court further finds Judge Duffy's legal analysis is well-reasoned.   Having carefully reviewed the record in this case and good cause appearing, it is

ORDERED that Mr. Palomarez's objections to the report and recommendation (Dockets 23-28) are overruled.

15

IT IS FURTHER ORDERED that the report and recommendation (Docket 22) is adopted as modified by this order.

IT IS FURTHER ORDERED that the respondents' motion to dismiss (Docket 9) is granted.

IT IS FURTHER ORDERED that Mr. Palomarez's motions for a copy of the grand jury transcript (Dockets 32 & 38) are denied as moot.

IT IS FURTHER ORDERED that Mr. Palomarez's motion for an evidentiary hearing (Docket 34) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's motion for a supplemental amendment to the petition (Docket 38) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's motion for summary judgment (Docket 39) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's motion for release pending hearing and appeal (Docket 41) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's motion to amend the petition (Docket 44) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's motion for hearing (Docket 52) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's motion for discovery (Docket 54) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's amended motion to show cause for procedural default (Docket 56) is denied.

16

IT IS FURTHER ORDERED that Mr. Palomarez's motion for leave to amend (Docket 58) is denied.

IT IS FURTHER ORDERED that Mr. Palomarez's petition (Docket 1) is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the court declines to issue a certificate of appealability.   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added) (establishing a two-prong standard).   "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the case or that the petitioner should be allowed to proceed further.   In such circumstances, no appeal would be warranted."   Id. The court does not believe reasonable jurists would find the court's ruling debatable or wrong.   Accordingly, a certificate of appealability shall not issue in light of the second prong of the Slack standard.

17

Although the court declines to issue a certificate of appealability, Mr. Palomarez may timely seek a certificate of appealability from the United States Court of Appeals for the Eighth Circuit under Fed. R. App. P. 22.   See Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts and Fed. R. App. P. 22.

Dated March 3, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

18